JACK J. MITCHELL, Plaintiff-Appellant, *v*. RALPH WEIGER *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 76-808

Opinion filed December 20, 1977.

Louis V. Kiefor, of Calumet City, for appellant.

Chester J. Maciorowski, James W. Kissel, and Hugh H. Patinkin, all of Chicago, for appellees.

Mr. JUSTICE PUSATERI delivered the opinion of the court:

Plaintiff, Jack J. Mitchell, filed suit against defendants, Ralph Weiger, William B. Johnson, Stanley E. G. Hellman, Illinois Central Industries, Inc., and its subsidiary Abex Corporation, and Signal Stat Corporation. The suit was predicated on three counts for compensatory and punitive damages resulting from the allegedly malicious and wrongful interference of plaintiff's contractual business relationship with Paul Journee, S.A. (Journee), a French corporation. Plaintiff appeals from a judgment of the circuit court of Cook County dismissing his cause of action against defendants pursuant to section 48(f) of the Civil Practice Act. (Ill. Rev. Stat. 1975, ch. 110, par. 48(f).) The issues for review are whether the document entitled "Release" must be construed as a covenant not to sue and whether the release of contractual claims between contracting parties constituted a release of separate tort claims against defendants who were not parties to either the contract or the "Release."

On March 24, 1972, plaintiff entered into a contract with Journee, a manufacturer of accessories for automobiles, bicycles and motorcycles. Under the contract, plaintiff had the exclusive right to sell and promote Journee products within North America. In October 1972, defendants Weiger and Johnson allegedly represented to plaintiff that Illinois Central Industries, Abex Corporation and Signal Stat Corporation had purchased Journee. Plaintiff further alleged those representations were false and that all defendants conspired to interfere with his contractual rights with Journee.

On December 12, 1973, plaintiff and Journee entered into an agreement entitled "Release." This document, drafted by counsel for Journee and reviewed by plaintiff's attorneys, provided in part:

"WHEREAS, the parties hereto are in dispute regarding the termination of the Agreement; and

WHEREAS, the parties hereto desire to settle and terminate any and all disputes and controversies and to release each other from all claims or demands which either of them may now have, or might subsequently have, as a result of any act, omissions to act or transactions relating to such Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual promises and covenants herein set forth, the parties hereto agree as follows:

1. Mitchell * * * does hereby release and forever discharge Journee, * * *, from all claims and liabilities of every kind and nature which now exist or which may in the future come into

existence which arise from or relate to the Agreement and the relationship between Journee and Mitchell pursuant thereto or any promises, agreements, acts, omissions to act, transactions, suits or proceedings relating thereto, including, without limiting the generality and scope of the foregoing, all claims, obligations and liabilities under the Agreement, or which in any way relate or pertain to said Agreement or to any of the acts, omissions to act or transactions referred to in the Agreement. * * *

2. * * * Journee * * * [does] hereby release and forever discharge Mitchell * * * from all claims and liabilities of every kind and nature which now exist or which may in the future come into existence which arise from or relate to the Agreement and the relationship between Journee and Mitchell pursuant thereto or any promises, agreements, acts, omissions to act, transactions, suits or proceedings relating thereto.

3. The Agreement and all other agreements, understandings or promises between the parties, except those embodied and contained in this Release are hereby cancelled and terminated. * * *

6. Anything to the contrary herein notwithstanding, nothing herein shall be deemed in any way to be a release by Mitchell of Illinois Central Industries, Abex Corporation, Signal-Stat Corporation or any other direct or indirect subsidiaries of Illinois Central Industries from any right or claim which Mitchell has or may have against them or any of them.

7. In final settlement of all claims, rights and obligations between the parties to this Release as herein before mentioned, Journee hereby agrees to pay Mitchell Thirty Three Thousand Dollars ($33,000) * * *."

■■ Plaintiff contends that the instrument entitled "Release" must be construed as a covenant not to sue, to give effect to the language in paragraph 6 of the document, which reserves a right to proceed against parties other than Journee. Defendants assert the strict common law rule that a release of one tortfeasor releases all tortfeasors despite a manifested intention to the contrary. That rule enunciated in *Rice v. Webster* (1857), 18 Ill. 331, and *Benjamin v. McConnell* (1847), 9 Ill. 536, and relied on by defendants has been discredited. *Rice v. Webster* and *Benjamin v. McConnell* were effectively overruled by the case of *Parmelee v. Lawrence* (1867), 44 Ill. 405, in which the court stated:

"We would further add that the weight of the modern authorities is against these cases, and in favor of the more reasonable rule, that where the release of one of several obligors shows upon its face, and in connection with the surrounding circumstances, that it was

the intention of the parties not to release the co-obligors, such intention, as in the case of other written contracts, shall be carried out, and to that end the instrument shall be construed as a covenant not to sue." (44 Ill. 405, 413-14. Also see *Van Meter v. Gurney* (1st Dist. 1929), 251 Ill. App. 184, 187.)

However, the strict doctrine was thereafter adhered to in the case of *Petroyeanis v. Pirola* (1st Dist. 1917), 205 Ill. App. 310 (abstract), but that case has not been followed. *Van Meter v. Gurney; Hulke v. International Manufacturing Co.* (1957), 14 Ill. App. 2d 5, 28, 142 N.E.2d 717, *appeal denied* (1957), 11 Ill. 2d 630; *Holt v. A. L. Salzman & Sons* (1st Dist. 1967), 88 Ill. App. 2d 306, 232 N.E.2d 537, *appeal denied* (1968), 37 Ill. 2d 627.

The strict common law doctrine was revived in part by the case of *Aiken v. Insull* (7th Cir. 1941), 122 F.2d 746, in which the Federal court declared that the rule of *Parmelee v. Lawrence* was restricted to joint obligors and had no effect on joint tortfeasors. That rule was followed in *Reconstruction Finance Corp. v. Central Republic Trust Co.* (7th Cir. 1942), 128 F.2d 242, and *Bryan v. Creaves* (7th Cir. 1943), 138 F.2d 377. However, in that case of *Essington v. Parish* (7th Cir. 1947), 164 F.2d 725, 729, the same court which decided *Aiken* stated as follows:

"[W]e think the law is now settled in Illinois that the substance of the agreement is the controlling factor, and that the essential fact to be determined is 'what was the intention of the parties.' Illinois looks to all the circumstances to determine whether or not the transaction was intended as, and was in substance, a settlement and satisfaction, or merely an agreement not to sue, and that, as was held in *City of Chicago v. Babcock, supra*, 143 Ill. [358], 367, 32 N.E. 271, is a question of fact."

The court then stated that *Aiken* and *Bryan* were not "opposite" because in each case the evidence indicated an intention to execute a release rather than a covenant not to sue.

In *City of Chicago v. Babcock* (1892), 143 Ill. 358, 32 N.E. 271, the court held that whether the parties intended the agreement not to proceed against one party to be in full satisfaction of the damages sustained or was merely part payment was a question of fact for the jury. Among the cases cited was *Parmelee v. Lawrence*. Thus, it may be inferred that the *Parmelee* rationale did, in fact, apply to cases involving joint tortfeasors as well as to joint obligors. In the case of *Todd v. Mitchell* (1897), 168 Ill. 199, 204, 48 N.E. 35, the court held that a release was no bar to suit where the intention of the parties was to release only those matters specifically recited. See also *Holt v. A. L. Salzman & Sons*, which explicitly rejected the conclusion of *Aiken* and accepted that of *Essington*.

In *Manthei v. Heimerdinger* (1947), 332 Ill. App. 335, 75 N.E.2d 132, the court invoked the rule that the release of one joint tortfeasor releases all,

but in that case, as in the case of *Wallner v. Chicago Consolidated Traction Co.* (1910), 245 Ill. 148, cited by defendants, the agreement not to proceed against one party did not contain a reservation against third parties, and the agreement was deemed to be in consideration of payment in full satisfaction for the injury. The court also took note that where the release is accompanied by a restriction or reservation there is no presumption of full satisfaction, and in such case, the instrument is, in effect, a covenant not to sue. While *Manthei* is authority for the proposition that a plaintiff is entitled to only one full compensation for his injuries, it may not be cited in derogation of the principle that the intention of the parties is controlling. Such principle is enunciated in the recent case of *Gladinus v. Laughlin* (5th Dist. 1977), 51 Ill. App. 3d 694, 696, 366 N.E.2d 430, where the court stated:

> "* * * Illinois courts have uniformly held that the intention of the parties controls the scope and effect of the release; such intent is determined from the language of the instrument when read in light of the circumstances surrounding the transaction. [Citations.] Under this approach, Illinois courts will restrict the language of a general release to the thing or things intended to be released and refuse to interpret generalities so as to defeat a valid claim not then in the minds of the parties. [Citation.]"

Also see *Robinson v. United States* (N.D. Ill. 1976), 408 F. Supp. 132; *Zenith Radio Corp. v. Hazeltine Research Inc.* (1971), 401 U.S. 321, 342-47, 28 L. Ed. 2d 77, 91 S. Ct. 795; Annot., 73 A.L.R. 2d 403, 407-09 (1960); Restatement (Second) of Torts §885, Comments a-d (Tent. Draft No. 16, 1970); 55 Ill. B.J. 500 (1967).

■■■ In the instant case, the document which releases claims against Journee contains no language indicating that the payment received from Journee represents satisfaction for the entire injury, and the inclusion of paragraph 6 indicates an intention to the contrary. That paragraph provides that the reservation was to be given effect "Anything to the contrary notwithstanding." That language mandates that the instrument be construed to be a covenant not to sue. (*Nickerson v. Suplee* (1912), 174 Ill. App. 136.) Such construction is also mandated by the rule which allows parol evidence to be adduced to determine the intention of the parties in construing a contract of release where the litigation is between a party to the contract and a stranger. *Reams v. Janoski* (1932), 268 Ill. App. 8; *Gore v. Henrotin* (1911), 165 Ill. App. 222; *Stevens v. Ryder* (1st Dist. 1970), 129 Ill. App. 2d 109, 262 N.E.2d 761 (abstract); also see *General Casualty Co. v. Elam* (5th Dist. 1972), 8 Ill. App. 3d 215, 289 N.E.2d 699.

■■ Even if the instrument were construed as a release which would deprive plaintiff of a cause of action against defendants for compensatory

damages, plaintiff would still have an action against defendants for exemplary damages. It is well settled that an action in tort will lie against one who intentionally and knowingly without reasonable justification or excuse induces a breach of contract. (*Lumley v. Gye* (Q.B. 1853), 2 Ell. & Bl. 216; *W.P. Iverson & Co. v. Dunham Manufacturing Co.* (1st Dist. 1958), 18 Ill. App. 2d 404, 152 N.E.2d 615; *Herman v. Prudence Mutual Casualty Co.* (1969), 41 Ill. 2d 468, 244 N.E.2d 809.) Where a third party influences a contracting party to breach his contract, the innocent contracting party has a right of action against both the other contracting party and a right in tort against the third party. *Swift v. Beaty* (1954), 39 Tenn. App. 292, 282 S.W.2d 655; *cf. Johnson v. Nationwide Business Forms, Inc.* (1st Dist. 1976), 41 Ill. App. 3d 128, 359 N.E.2d 171.

■■■ Although there can be no double recovery for compensatory damages, exemplary damages may be awarded from the parties inducing the breach upon proof of malice. (*Duff v. Engelberg* (1965), 237 Cal. App. 2d 505, 47 Cal. Rptr. 114; Prosser, Torts §123, at 972-73 (3d ed. 1964); *W.P. Iverson & Co. v. Dunham Manufacturing Co., supra. Blivas & Page, Inc. v. Klein* (2d Dist. 1972), 5 Ill. App. 3d 280, 282 N.E.2d 210.) Because exemplary damages are available only in a tort action against defendants, a release of contract claims against Journee could not act as a release of plaintiff's independent cause of action for punitive damages against defendants.

In conclusion, we find that plaintiff may seek compensatory damages against defendants to the extent his claim was not satisfied by the consideration received from Journee. Exemplary damages also may be awarded upon proper showing.

For these reasons, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for further proceedings.

Judgment reversed and remanded.

DOWNING, P. J., and STAMOS, J., concur.